U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed July 16, 2009**                          **United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MANCHESTER, INC., et al., | § | CASE NO. 08-30703-BJH-11 |
| | § | |
| Debtors. | § | |
| | § | |
| ALEX D. MOGLIA, LITIGATION | § | |
| TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| - against - | § | |
| | § | |
| MARVIN KEITH, BRAZOS EQUITIES | § | ADV. PRO. NO. 09-3027-BJH |
| LLC, TURBO CHARGED MARKETING, | § | |
| MANCHESTER BONUSELECT, | § | |
| LYCAR ADVISORY LLC, RICHARD | § | |
| R. GAINES, STEPHEN R. SCORGIE, | § | |
| HERBERT HIRSCH, NORMAN | § | |
| THOENNES, RICK STANLEY, | § | |
| LAWRENCE A. TAYLOR, JAMES | § | |
| WOROSZ, and ANTHONY HAMLIN, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are motions to dismiss and/or for more definite statement (collectively, the "Motions") filed by each of the thirteen defendants (collectively, the "Defendants") named in the above adversary proceeding (the "Adversary"). The plaintiff, Alex D. Moglia, who is the trustee of the litigation trust created under the confirmed plan of reorganization in the Manchester, Inc. ("Manchester") and affiliated bankruptcy cases, opposes the Motions.

After extensive briefing by the parties, the Court heard the Motions on June 22, 2009. The Court has jurisdiction over the Adversary and the Motions in accordance with 28 U.S.C. §§ 1334 and 157. This Memorandum Opinion and Order contains the Court's decision with respect to the Motions.

## I.    FACTUAL BACKGROUND

On February 17, 2008 (the "Petition Date"), Manchester, along with certain of its affiliates (the "Affiliates") filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above Chapter 11 case (the "Case").[1] On April 17, 2008, Manchester and the Affiliates (collectively, the "Debtors") filed their Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (the "Disclosure Statement"), along with their joint plan of reorganization. On June 12, 2008, this Court confirmed the joint plan, as modified (the "Plan").

Pursuant to the Plan, various claims and causes of action belonging to the Debtors were transferred to a litigation trust to be created pursuant to the terms of the Plan (the "Litigation Trust"),

---

[1]The Affiliates' bankruptcy cases were administratively consolidated with the Case.

which claims and causes of action were to be pursued for the benefit of the Debtors' creditors.[2] On June 23, 2008, Alex D. Moglia was appointed as the trustee of the Litigation Trust (the "Litigation Trustee") pursuant to the terms of the Plan and was authorized to pursue "Causes of Action" (as defined in the Plan) as the representative of the estate in accordance with § 1123(b)(3)(B) of the Bankruptcy Code.

On January 20, 2009, the Litigation Trustee filed his complaint against the Defendants in this Adversary (the "Complaint"). The Complaint contains thirteen (13) counts. Counts I and II seek to avoid certain alleged preferential transfers pursuant to § 547 of the Bankruptcy Code; Counts III and IV seek to avoid certain alleged fraudulent transfers pursuant to § 548 of the Bankruptcy Code; Count V seeks to recover any avoided transfers pursuant to § 550 of the Bankruptcy Code; Count VI seeks to disallow the Defendants' claims in the Case pursuant to § 502(d) of the Bankruptcy Code; and Count VII seeks to subordinate the Defendants' claims[3] in the Case pursuant to § 510(c) of the Bankruptcy Code (collectively, the "Avoidance Claims"). In Count VIII, the Litigation Trustee seeks to re-characterize the Defendants' claims in the Case as equity pursuant to § 105(a) of the Bankruptcy Code. In Counts IX-XIII, the Litigation Trustee asserts state and/or common law claims including breach of fiduciary duty, payment of illegal dividends, and negligent misrepresentation. The Count VIII-XIII claims will be collectively referred to hereinafter as the "Non-Avoidance Claims."

On March 30, 2009, Defendant Norman Thoennes ("Thoennes") filed a motion to withdraw

---

[2]Many of these creditors' claims were also transferred to the Litigation Trust so that the Litigation Trustee could make distributions to such creditors from any litigation recoveries he realized.

[3]Three of the Defendants did not file proofs of claim in the Case; thus, certain counts are not applicable to them.

**Memorandum Opinion and Order**                                                                                           **Page 3**

the reference in the Adversary, asserting a right to a jury trial on the Litigation Trustee's claims and declining to consent to such a jury trial before this Court. Other of the Defendants reserved their rights with respect to the filing of a jury demand and to seek a withdrawal of the reference.

Pursuant to Local Bankruptcy Rule 5011.1, the Court is required to (i) hold a status conference with the parties when a motion to withdraw the reference is filed, and (ii) make a report and recommendation to the District Court in connection with that motion. The Court held its status conference with the parties on May 7, 2009. At that status conference, the parties agreed that in light of the Motions (which were pending at that time), this Court should hear and determine the Motions, after which a further status conference should be held and a report and recommendation could be made to the District Court regarding Thoennes' motion to withdraw the reference. An Order was entered to that effect on May 27, 2009.

## II.    CONTENTIONS OF THE PARTIES

The Defendants contend that the Complaint must be dismissed for either of two primary reasons. First, citing *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F. 3d 351, 355 (5th Cir. 2008) (hereinafter ""*United Operating*"), the Defendants contend that the Litigation Trustee lacks standing to bring the Avoidance Claims and the Non-Avoidance Claims because the Plan did not contain "specific and unequivocal retention language" so as to preserve those claims for pursuit by the Litigation Trustee post-confirmation. Second, and in the alternative, the Defendants contend, for a myriad of reasons, that the Litigation Trustee failed to plead the Avoidance Claims and the Non-Avoidance Claims with sufficient specificity under either Fed. R. Civ. P. 9(b) and/or 8(a). Accordingly, the Defendants contend that the Complaint fails to state a claim upon which relief may be granted in accordance with Fed. R. Civ. P. 12(b)(6) made applicable

here by Bankruptcy Rule 7012(b)(6).

In response, the Litigation Trustee contends that the Plan preserved, and then assigned to the Litigation Trust, the Avoidance Claims and the Non-Avoidance Claims that he asserts against the Defendants in the Complaint. Accordingly, as the representative of the estate under § 1123(b)(3)(B) of the Bankruptcy Code, the Litigation Trustee contends that he has standing to bring the Avoidance Claims and the Non-Avoidance Claims. Moreover, the Litigation Trustee contends that the allegations contained in the Complaint are sufficiently specific and that he has pled proper claims against the Defendants. According to the Litigation Trustee, the Motions should be denied.

## III.    LEGAL ANALYSIS

### A.    Standing – *i.e*., Were the Avoidance Claims and the Non-Avoidance Claims Preserved in the Plan for Pursuit by the Litigation Trustee?[4]

According to the Fifth Circuit, whether the Litigation Trustee has standing to bring the claims asserted in the Complaint turns on the language of the Plan. In the words of the Fifth Circuit, did the Plan "expressly retain the right to pursue such actions" and was the reservation of the claims "specific and unequivocal?" *United Operating*, 540 F.3d at 355. If so, the Litigation Trustee has standing to pursue the claims. If not, the Litigation Trustee lacks standing to pursue the claims and, accordingly, this Court lacks subject-matter jurisdiction over those claims. *Id*.

A brief of discussion of *United Operating* will be instructive. There, the Fifth Circuit addressed a debtor's standing to pursue claims after confirmation of its Chapter 11 plan and concluded that

---

[4]The Defendants also contend that the Litigation Trustee lacks standing to assert claims against the Defendants for alleged breaches of fiduciary duty to the Debtors' creditors and/or shareholders. The Court agrees. To the extent the Debtors' creditors and/or shareholders hold such claims, they were not transferred to the Litigation Trust for pursuit by the Litigation Trustee.

[u]pon confirmation of the plan, the estate ceased to exist, and [the debtor] lost its status as a debtor 'in possession.' At that time, [the debtor's] authority to pursue claims as though it were a trustee also expired. Nonetheless, in some cases the Code allows a reorganized debtor to bring a post-confirmation action on a 'claim or interest belonging to the debtor or to the estate.' A debtor may preserve its standing to bring such a claim . . . but only if the plan of reorganization expressly provides for the claims' 'retention and enforcement by the debtor.' After confirmation of a plan, the ability of the [debtor] to enforce a claim once held by the estate is limited.

For a debtor to preserve a claim, the 'plan must expressly retain the right to pursue such actions.' The reservation must be 'specific and unequivocal.' If a debtor has not made an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved. This is a logical consequence of the nature of a bankruptcy, which is designed primarily to 'secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time.' To facilitate this timely, comprehensive resolution of an estate, a debtor must puts its creditors on notice of any claim it wishes to pursue after confirmation. Proper notice allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it – 'absent specific and unequivocal retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote.'

*United Operating*, 540 F.3d at 355 (citations omitted). Although the bankruptcy court had disposed of the lawsuit by granting the defendants' motion for summary judgment, finding that the debtor's claims were barred by *res judicata* and collateral estoppel (arising from an earlier suit brought by the creditors' committee against the defendants), the Fifth Circuit never reached the *res judicata* or collateral estoppel issues. *Id*. at 354. Rather, the Fifth Circuit raised the standing issue *sua sponte*, ultimately concluding that the post-confirmation debtor lacked standing to bring the claims. The *United Operating* rationale was followed more recently in *The Nat'l. Benevolent Assoc. v. Weil, Gotshal & Manges, LLP (In re The Nat'l. Benevolent Assoc.)*, No. 08-50677, 2009 WL 1649485 (5th Cir. June 11, 2009) (unpublished disposition).

In applying the *United Operating* holding here, the Court must analyze the terms of the Plan, which provides, in relevant part, that:

On the Effective Date, subject to the distribution of the New Parent Common Stock and the New Subsidiary Equity Interests to the Holder of Allowed Class 4 Senior Lender Secured Claims (or its designee), all property of the Estates, and any property acquired by the Debtors during the Chapter 11 Cases or the Reorganized Debtors under the Plan, shall revest in the respective Reorganized Debtors [sic] pursuant to the terms and conditions of the Plan, including, without limitation, all executory contracts and leases assumed by the Debtors pursuant to the Plan or other Court order, free and clear of all Claims, liens, charges, or other encumbrances and Interests except as provided in the Plan and the Confirmation Order; *provided, however, that all Causes of Action shall be transferred to the Litigation Trust as of the Effective Date, to be pursued by the Litigation Trustee, as a representative of the Estates under section 1123(b)(3)(B) of the Bankruptcy Code for the benefit of Claims Holders[5] as set forth in the Plan.*

Plan, Article V, C, pp. 8-9 (emphasis added). Similarly, when addressing the "Preservation of Rights of Action (Including Avoidance Actions)," the Plan provides that the Litigation Trustee

shall have the exclusive right to prosecute and enforce any rights to payment of claims or other rights that the Debtors or the Estates may hold against any Person (including Avoidance Actions). The Litigation Trustee shall have the exclusive right to assert any Claims or Defenses that the Debtors, the Reorganized Debtors or the Estates may hold against any Person asserting any Claims and/or Interests against the Debtor, the Reorganized Debtors or the Estates except with respect to Causes of Action that are not transferred to the Litigation Trust as set forth in Sections V.A. and V.C. of the Plan. Any and all claims, counterclaims, offsets, causes of action . . . that the Debtors have, or could have, shall be preserved for the benefit of the Litigation Trustee.

Plan, Article X, F, p. 21. In turn, the Plan defines "Causes of Action" to mean

any and all actions, claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, causes of action, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed,

---

[5]The Plan defined (i) "Claims Holder," "Claimant" and "Creditor" to "mean the "Holder of a Claim," Plan, Exhibit A, ¶ 15; (ii) "Holder" to mean "a Person Holding an Interest or Claim . . . ," *id*. at ¶ 37; and (iii) "Claim" as it is defined in § 101(5), as supplemented by § 102(2), of the Bankruptcy Code, *id*. at ¶ 14.

**Memorandum Opinion and Order**                                                    **Page 7**

contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtors *(including the Avoidance Actions)*, provided, however, that Causes of Action shall not include (i) any and all rights to tax refunds and (ii) causes of action arising in the ordinary course of the Debtors' business relating to enforcement and collection of automobile loans and related retail installment contracts.

*Id*., Exhibit A, ¶ 12 (emphasis added). Finally, the Plan defines "Avoidance Actions" to

mean

any and all Causes of Action which a trustee, the Debtors, the Estates or other appropriate party in interest may assert under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code.

*Id*., Exhibit A, ¶ 4.

After reviewing these provisions of the Plan in the context of the Fifth Circuit's holding in *United Operating*, the Court concludes that the Plan specifically and unequivocally preserved the Avoidance Actions for pursuit by the Litigation Trustee as the representative of the estate under § 1123(b)(3)(B) of the Bankruptcy Code. While the Plan did not identify the specific individuals or entities that the Litigation Trustee intended to sue, the Fifth Circuit has not required that level of specificity. The Court comes to this conclusion based upon the *United Operating* court's reliance on *In re Ice Cream Liquidation, Inc*., 319 B.R. 324, 337-338 (Bankr. D. Conn. 2005) as additional support for its conclusion that the plan's reservation of the right to pursue such actions must be "specific and unequivocal," describing *Ice Cream* as "holding that the plan's categorical reservation of 'preference' claims was sufficiently specific; plan need not itemize individual transfers that may be pursued as preferential." *United Operating*, 540 F.3d at 355. Thus, while creditors must be told in the plan of reorganization that avoidance actions will be pursued post-confirmation by the representative of the estate, the individual prospective defendants do not have to be identified in the

plan.

However, after carefully considering the terms of the Plan with respect to the Non-Avoidance

Claims in light of the Fifth Circuit's holding in *United Operating*, the Court concludes that the Plan

failed to specifically and unequivocally retain the right to pursue those claims.[6]  The Litigation

---

[6]The undersigned judge comes to this conclusion with great reluctance, but concludes that this result is compelled by the seemingly bright-line rule announced by the Fifth Circuit in *United Operating*.  However, this judge respectfully urges the Fifth Circuit to reconsider its *United Operating* holding because such holding works a severe injustice under the facts present here.

Here, the primary secured creditor of the Debtors, Palm Beach Multi-Strategy Fund, L.P. and certain of its affiliates (collectively, "Palm Beach"), filed a 26-page "Motion Pursuant to Section 1104(a)(1) of the Bankruptcy Code for Appointment of a Chapter 11 Trustee" within a few days after the Petition Date.  In that motion Palm Beach alleged numerous "bad acts" by various of the Debtors' officers and directors (and former officers and directors), including certain of the Defendants.  Accordingly, it became clear to the Court early on in the Case that Palm Beach believed that these parties had committed acts which would give rise to their liability to the Debtors and/or Palm Beach.

An official committee of unsecured creditors (the "Creditors' Committee") was appointed by the Office of the United States Trustee.  The Creditors' Committee retained professionals in the Case to represent the interests of the Debtors' unsecured creditors.

Recognizing that the Debtors were hopelessly insolvent and that Palm Beach had a lien on all of the Debtors' assets, the Debtors, Palm Beach, and the Creditors' Committee quickly came to the conclusion that a plan of reorganization could be proposed that cancelled existing equity interests in the Debtors and transferred the stock in the Reorganized Debtors to Palm Beach in satisfaction of its allowed secured claim.  However, such a plan would leave Palm Beach with a large unsecured claim and it would leave the claims of, among others, general unsecured creditors unaddressed.  Because Palm Beach and the Creditors' Committee believed that the Debtors owned valuable unliquidated claims and causes of action against various third-parties, including the Avoidance Claims and the Non-Avoidance Claims asserted in the Adversary against the Defendants, the Debtors agreed to propose in the Plan that (i) the Litigation Trust be created, (ii) all of the Causes of Action be preserved and transferred to the Litigation Trust, and (iii) those Causes of Action be pursued by an independent third-party – *i.e.*, the Litigation Trustee – for the benefit of various of the Debtors' creditors.  *See* Plan, Article V, A.  The Creditors' Committee was granted the right to appoint the initial Litigation Trustee.  *Id*.  Not only did the Debtors contribute some portion of the Leftover Cash – *i.e.*, up to $500,000 – to the Litigation Trust, Palm Beach contributed an additional $3.2 million of its own funds to the Litigation Trust to insure that the trust had sufficient cash to meaningfully pursue the Causes of Action.

In other words, the Creditors' Committee quickly recognized that the only recovery unsecured creditors could expect to receive in the Case was that which could be generated through the successful prosecution of the Causes of Action.  Moreover, the Creditors' Committee bargained for, and received, the right to select the Litigation Trustee under the Plan to insure that an independent person who they had confidence in would control the litigation.  Finally, the Creditors' Committee bargained for, and received, a commitment from Palm Beach to make sufficient funds available to the Litigation Trust (over $3.5 million in total) to insure that the trust had a substantial "war chest" so that it could pursue all appropriate litigation to conclusion.  The Creditors' Committee supported confirmation of the Plan, s*ee* Docket No. 306 in Case No. 08-30703-BJH-11, as did Palm Beach.  Palm Beach voted its secured claim (Class 4) and unsecured claim (Class 7) in favor of the Plan.  While Class 5 general unsecured creditors voted to reject the Plan, that outcome was largely dictated by the rejecting ballots of Ray and Victoria Lyle (the "Lyles") in the aggregate amount of approximately $32.9 million, who had been sued by the Debtors at the time of confirmation and which suit would be assigned to the Litigation Trust under the terms of the Plan for pursuit by the Litigation Trustee.  In other words, a target of the Plan's contemplated litigation voted against the Plan.  Ironically, for strategic reasons not relevant here, the Lyles sought, and received, permission to withdraw their proofs of claim in the Case post-confirmation.  The Plan was confirmed in accordance with § 1129(b)(1) & (b)(2)(B)(ii) with respect to the Class 5 general unsecured claims – *i.e.*, the Plan did not

---

**Memorandum Opinion and Order**                                                                      **Page 9**

Trustee's proposed claims against the Debtors' former officers and directors for (i) re-characterization of their claims, (ii) alleged breaches of fiduciary duty, (iii) alleged illegal dividends, and (iv) alleged negligent misrepresentations are not "specifical[ly] and unequivocal[ly]" retained in the Plan. *United Operating*, 540 F.3d at 355. While the Plan's definition of Causes of Action is certainly broad enough to include them as claims the Debtors intended to preserve and transfer to the Litigation Trust, the Plan does not expressly identify these claims; nor does the Plan specifically and unequivocally transfer them to the Litigation Trust for pursuit by the Litigation Trustee post-confirmation.

---

discriminate unfairly and was fair and equitable with respect to the Class 5 general unsecured claims.

From the undersigned judge's perspective, creditors knew everything they needed to know about the litigation contemplated in the Plan in order to make an informed judgment regarding the Plan. Specifically, creditors knew that if they hoped to receive a distribution in the Case, litigation claims that the Debtors owned needed to be successfully pursued. Whether those claims and causes of action were specifically identified in the Plan – *i.e.*, "the Avoidance Claims," or were simply described in general terms – *i.e.*, "any and all claims . . . [and] causes of action," was of no real significance to the Debtors' creditors whose claims were to be paid from possible Litigation Trust recoveries. Rather, all those creditors needed to know was that (i) without the litigation they would receive nothing on their claims against the Debtors, (ii) if the Debtors' claims against third parties were preserved in the Plan, transferred to the Litigation Trust, and successfully prosecuted by the Litigation Trustee, an independent third party selected by the Creditors' Committee, they might receive a distribution on their claims against the Debtors, and (iii) how the litigation would be funded. A rule that requires more disclosure than that contained in the Plan (or its attendant disclosure statement), from this judge's perspective, is unduly rigid and, in many bankruptcy cases, completely speculative. In most bankruptcy cases, the litigation claims will not have been asserted and discovery regarding the merits of those claims will not have been undertaken. Thus, any attempt to evaluate the merits of those claims for creditors would be premature. Moreover, to delay confirmation of a plan so that prospective litigation claims can be brought pre-confirmation and then be assigned to a litigation trust would only serve to needlessly run up the cost of administering bankruptcy cases.

For these reasons, this Court believes that a rule that requires more specific disclosure, particularly here where the proposed litigation is to be funded from monies the unsecured creditors had no claim to, unnecessarily prejudices the Debtors' creditors and provides a needless windfall to the Defendants. Under the facts present here, the Defendants who filed proofs of claim in the Case (and who arguably were entitled to notice of the Debtors' intent to preserve and pursue claims against them) knew, or should have known, that they were the targets of post-confirmation litigation under the Plan.

Needless to say, the Court has no view of the merits of the Non-Avoidance Claims. This Court's proposed rule regarding the preservation and transfer of claims against third parties in a plan of reorganization has nothing to do with the viability of the Litigation Trustee's claims as pled in the Complaint. Rather, it is about maximizing the value of the Debtors' estates for their legitimate creditors (if the Defendants have, for example, received preferences or fraudulent transfers, § 502(d) precludes them from sharing in any distributions in the Case until those amounts have been repaid, or if the Defendants are guilty of other "bad acts," the Code may permit the equitable subordination of their claims in the Case to the claims of other creditors under § 510(c) of the Bankruptcy Code). Under the circumstances present here, the forfeiture of the Non-Avoidance Claims is unnecessarily harsh. The Litigation Trustee should be found to have standing to pursue the Causes of Action and legitimate creditors should be given the opportunity to realize some value on account of their claims against the Debtors. Because this result is precluded under the *United Operating* holding, the undersigned respectfully requests that such holding be reconsidered.

**Memorandum Opinion and Order**                                                                              **Page 10**

In an effort to find Plan language addressing the Debtors' claims against their former officers and directors, the Litigation Trustee points to the exclusion of those parties from the release provisions of the Plan. *See* Plan, Article X, C ("Notwithstanding the foregoing or anything herein to the contrary, the Plan shall not constitute a release of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities of . . . (iii) the Debtors or their Estates against all current or former directors, officers, and employees of the Debtors."). However, as the Defendants correctly argue, that language simply demonstrates the Debtors' intent not to release their claims against their former officers and directors; under the holding of *United Operating*, it does not specifically and unequivocally preserve those claims for post-confirmation pursuit by an estate representative.

For these reasons, the Court concludes that the Avoidance Claims were preserved for pursuit by the Litigation Trustee pursuant to the terms of the Plan, while the Non-Avoidance Claims were not properly preserved in the Plan.

**B.      Is the Complaint Sufficiently Specific to State a Claim against the Defendants?**

While the Court does not agree with all of the alleged pleading deficiencies raised by the Defendants in the Motions, the Court agrees that there are significant pleading deficiencies in the Complaint. The Court identified the pleading deficiencies it believed existed with respect to the claims pled in the Complaint on the record at the June 22, 2009 hearing on the Motions (the "Hearing"). The Trustee acknowledged these deficiencies at the Hearing and requested, in lieu of the dismissal of the Complaint, an opportunity to amend it in order to properly plead claims against the Defendants.

The Court agrees that the Trustee should be permitted to amend his Complaint in order to properly plead the Avoidance Claims against the Defendants. As noted previously, the Avoidance

Claims were properly preserved in the Plan and were assigned to the Litigation Trust for pursuit by the Litigation Trustee for the benefit of the Debtors' creditors. The Litigation Trustee should be permitted to attempt to pursue those claims.

At the Hearing, the Litigation Trustee requested that he be permitted to file his amended complaint within forty-five (45) days after the issuance of a decision addressing the Litigation Trustee's standing to bring the claims pled in the Complaint. The Defendants agreed to the Litigation Trustee's requested time-frame for amendment (assuming that the Court concluded that the Litigation Trustee had standing to pursue some or all of the claims pled in the Complaint).

Accordingly, to the extent the Litigation Trustee wishes to pursue the Avoidance Claims against any of the Defendants, he must amend the Complaint to re-state those claims within forty-five (45) days of the entry of this Memorandum Opinion and Order on the docket. Because the Litigation Trustee lacks standing to pursue the Non-Avoidance Claims, no amendment with respect to those claims is appropriate.

## IV.   CONCLUSION

While the Plan contains sufficiently "specific and unequivocal retention language" to preserve the Avoidance Claims for pursuit by the Litigation Trustee post-confirmation, the Plan does not contain sufficiently "specific and unequivocal retention language" to preserve the Non-Avoidance Claims under the standard articulated by the Fifth Circuit in *United Operating*, 540 F.3d at 355. Accordingly, the Litigation Trustee lacks standing to bring the Non-Avoidance Claims and this Court lacks jurisdiction to hear them.

While the Litigation Trustee has standing to assert the Avoidance Claims, the Court concludes, for the reasons stated on the record at the Hearing, that the Litigation Trustee failed to plead proper

Avoidance Claims against the Defendants in the Complaint. Accordingly, the Litigation Trustee must file an amended complaint if he wishes to pursue any Avoidance Claims against the Defendants within forty-five (45) days of the entry of this Memorandum Opinion and Order on the docket. If no such amended complaint is timely filed by the Litigation Trustee, the Complaint shall be dismissed for its failure to state a claim upon which relief can be granted.

   **SO ORDERED**.

### End of Memorandum Opinion and Order ###